IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

HEALTHTRIO, LLC,
a Colorado limited liability company,

      Plaintiff,

v.

AETNA, INC.,
a Connecticut corporation;
ACTIVEHEALTH MANAGEMENT, INC.,
a Delaware corporation; and
MEDICITY, INC.,
a Colorado corporation,

      Defendants.

---

## COMPLAINT WITH JURY DEMAND

---

This is an action for patent infringement in which Plaintiff HealthTrio, LLC ("HealthTrio") makes the following allegations against Defendant Aetna, Inc. ("Aetna"), Defendant ActiveHealth Management, Inc. ("ActiveHealth"), and Defendant Medicity, Inc. ("Medicity"). Aetna, ActiveHealth, and Medicity are referred to collectively herein as "Defendants."

## I.    THE PARTIES

1.    Plaintiff HealthTrio, LLC ("HealthTrio") is a Colorado corporation with its principal place of business at 400 South Colorado Blvd., #540, Denver, Colorado 80246.

2.     On information and belief, Defendant Aetna, Inc. ("Aetna") is a Pennsylvania corporation with its corporate headquarters and principal place of business at 151 Farmington Avenue, Hartford, Connecticut 06156.  Aetna may be served via its registered agent for service of process, CT Corporation System, One Corporate Center, Hartford, Connecticut 06103-3220.

3.     On information and belief, Defendant ActiveHealth Management, Inc. ("ActiveHealth") is a Delaware corporation with its corporate headquarters and principal place of business at 1333 Broadway, New York, New York 10018.  ActiveHealth may be served via its registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4.     On information and belief, Defendant Medicity, Inc., ("Medicity") is a Delaware corporation with its corporate headquarters and principal place of business at 56 East Broadway, Suite 100, Salt Lake City, Utah 84111.  Medicity may be served via its registered agent for service of process, The Corporation Company, 1675 Broadway, Suite #1200, Denver, Colorado 80202.

## II.     JURISDICTION, VENUE, AND JOINDER

5.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     This Court has personal jurisdiction over Defendants.  Defendants have conducted extensive commercial activities and continue to conduct extensive commercial activities within the State of Colorado, including offering insurance products regulated by various Colorado governmental agencies.  Defendants, directly and/or through intermediaries (including Defendant

entities, subsidiaries, distributors, sales agents, partners and others), manufacture, ship, distribute, offer for sale, sell, and/or advertise their products (including, but not limited to, the products and services that are accused of infringement in this lawsuit) in the United States and the State of Colorado.   Defendants (directly and/or through intermediaries, including other Defendant entities, subsidiaries, distributors, sales agents, partners and others) have purposefully and voluntarily placed one or more of their products and services (including, but not limited to, the products and services accused of infringement in this lawsuit offered on Aetna, ActiveHealth, and/or Medicity websites), as described below in HealthTrio's ten claims for relief, into the stream of commerce with the expectation that the products and services will be purchased by customers in Colorado.   These infringing products and services have been and continue to be purchased by customers or consumers in Colorado.   Accordingly, Defendants have committed the tort of patent infringement within the State of Colorado as alleged in more detail below.

7.      Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(b).

8.      Joinder of Defendants in this action is proper pursuant to 35 U.S.C. § 299.   As alleged in more detail below (including without limitation paragraphs 58-70), all Defendants are importing, offering to sell and/or selling many of the same infringing products and/or services, and questions of fact common to all Defendants will arise in this action.

### III.      THE PATENTS-IN-SUIT

9.      This lawsuit asserts causes of action for infringement of United States Patent Nos. 7,428,494;  7,440,904;  7,509,264;  7,831,446;  8,073,710;  8,214,234;  8,229,760,  8,265,954; 8,131,563; and 8,321,239.   These ten patents are referred to collectively herein as the "Patents-in-Suit."

A.     **United States Patent No. 7,428,494**

10.     On September 23, 2008, United States Patent No. 7,428,494 ("the '494 Patent"), entitled "Method and System for Generating Personal/Individual Health Records," was duly and legally issued to inventors Malik M. Hasan, John C. Peterson, and J. Dominic Wallen by the United States Patent and Trademark Office ("USPTO") after a full and fair examination.  The '494 Patent claims a priority date of October 11, 2000, based on Provisional Patent Application No. 60/239,860.

11.     HealthTrio is the owner of the entire right, title, and interest in and to the '494 Patent by assignment, and has the exclusive right to sue for infringement and recover damages for all past, present, and future infringement, including against Defendants.  A true and correct copy of the '494 Patent is attached as Exhibit A.

12.     The '494 Patent is generally directed to computerized methods and systems for generating personal/individual health records ("PHR") gathered and compiled from diverse data sources including, but not limited to, payor claims data, patient questionnaires or direct input, laboratories, imaging centers, and freestanding out-patient facilities, hospitals, and physicians.

13.     By way of example only, Claim 1 recites one of the inventions disclosed in the '494 Patent:

> (1) A method for generating a personal/individual health record, said method comprising a personal health record system server performing the steps:
>
> (a) enrolling a patient in a health plan of a payor, wherein the patient undergoes encounters with a plurality of health care providers regarding a health related issue of the patient, wherein the health care providers request payment for at least a portion of the cost for the encounters from the payor, wherein the health care providers submit health related information of the patient to the payor to support the cost of encounters with the patient;

(b) initially establishing a communication link between a personal health record ("PHR") system and the payor, wherein there is no communication between the PHR system and the health care providers and between the PHR system and the patient;

(c) receiving payor claims data by the personal health record system server regarding the patient from the payor via the communication link;

(d) analyzing at the PHR system server said payor claims data to determine which portion of said payor claims data is encounter data comprising at least one of a diagnosis, a treatment, a medication, a procedure of said patient, a history of office visits with one or more of the health care providers, and duration of office visits;

(e) translating at the PHR system server said encounter data into at least one universal health care concept code;

(f) creating at the PHR system server a personal/individual health record of the patient by storing one or more entries into the personal/individual health record based on the encounter data and associating the universal health care concept code with each entry;

(g) organizing at the PHR system server the personal/individual health record by grouping together entries in the personal/individual health record as related based on the universal health care concept code associated with the entries;

(h) subsequent to steps (a), (b), (c), (d), (e), and (f), establishing a communication link between the personal health record system and the patient, wherein said personal/individual health record is viewable by said patient via the communication link; and

(i) subsequent to steps (a), (b), (c), (d), (e), and (0, supplementing the personal/individual health record with health-related data regarding the patient from one or more of the health care providers.

**B.**     **United States Patent No. 7,440,904**

14.     On October 21, 2008, United States Patent No. 7,440,904 ("the '904 Patent"),

entitled "Method and System for Generating Personal/Individual Health Records," was duly and

legally issued to inventors Malik M. Hasan, John C. Peterson, and J. Dominic Wallen by the USPTO after a full and fair examination.  The '904 Patent claims a priority date of October 11, 2000, based on Provisional Patent Application No. 60/239,860.

15.     HealthTrio is the owner of the entire right, title, and interest in and to the '904 Patent by assignment, and has the exclusive right to sue for infringement and recover damages for all past, present, and future infringement, including against Defendants.  A true and correct copy of the '904 Patent is attached as Exhibit B.

16.     The '904 Patent is generally directed to computerized methods and systems for generating PHR gathered and compiled from diverse data sources including, but not limited to, payor claims data, patient questionnaires or direct input, laboratories, imaging centers, and freestanding out-patient facilities, hospitals, and physicians.

17.     By way of example only, Claim 1 recites one of the inventions disclosed in the '904 Patent:

(1) A method for generating a personal/individual health record of a patient enrolled in a health plan of a payor, said method comprising a computer performing the steps:

(a) enrolling a patient in a health care plan of a payor, wherein the patient undergoes encounters with a plurality of health care providers regarding a health related issue of the patient, wherein the health care providers request payment for at least a portion of the cost for the encounters from the payor, wherein the health care providers submit health related information of the patient to the payor to support the cost of the encounters with the patient;

(b) initially establishing a communication link with between a personal health record ("PHR") system and the payor, wherein there is no communication between PHR system and the health care providers and between the PHR system and the patient;

(c) receiving to the PHR system server a payor data element indicative of a health related parameter for the patient from the payor via the communication link, wherein said payor data element includes payor claims data;

(d) extracting at the PHR system server encounter data comprising at least one of outpatient encounter history, hospital outpatient encounter history, and hospital admissions data from said payor data element;

(e) determining at the PHR system server at least one universal health care concept code corresponding to the encounter data;

(f) creating at the PHR system server a personal/individual health record of said patient by storing one or more entries into said personal/individual health record based on said encounter data that was extracted from said payor data element and associating the universal health care concept code with each entry;

(g) establishing from the PHR system server a communication link with at least one of the health care providers and the patient;

(h) supplementing to the PHR system server said personal/individual health record with supplemental data received from the health care providers and the patient;

(i) associating at the PHR system server an access list with each user capable of accessing the personal/individual health record, wherein said access list categorizes said personal/individual health record into a restricted set of entries and an accessible set of entries based on the universal health care concept code associated with each entry in the personal/individual health record;

(j) denying at the PHR system server access to a user requesting an entry in the personal/individual health record if the requested entry is in the restricted set of entries;

(k) allowing at the PHR system server access to a user requesting an entry in the personal/individual health record if the requested entry is in the accessible set of entries; and wherein steps (b), (c), (d), (e) and (f) occur prior to steps (g) and (h).

**C.**    **United States Patent No. 7,509,264**

18.    On March 24, 2009, United States Patent No. 7,509,264 ("the '264 Patent"), entitled "Method and System for Generating Personal/Individual Health Records," was duly and legally issued to inventors Malik M. Hasan, John C. Peterson, and J. Dominic Wallen by the USPTO after a full and fair examination.  The '264 Patent claims a priority date of October 11, 2000, based on Provisional Patent Application No. 60/239,860.

19.    Plaintiff HealthTrio is the owner of the entire right, title, and interest in and to the '264 Patent by assignment, and has the exclusive right to sue for infringement and recover damages for all past, present, and future infringement, including against Defendants.  A true and correct copy of the '264 Patent is attached as Exhibit C.

20.    The '264 Patent is generally directed to computerized methods and systems for restricting user access to PHR.

21.    By way of example only, Claim 1 recites one of the inventions disclosed in the '264 Patent:

> (1) A method for selectively restricting access to a personal/individual health record, said method comprising a computer performing the steps:
>
> (a) making a personal health record ("PHR") system with a personal/individual health record of a patient accessible at least to said patient and a health care provider of said patient via the Internet, wherein the personal/individual health record includes a plurality of entries that are associated with at least one universal health care concept code;
>
> (b) inserting to the PHR system an entry into said personal/individual health record based on input received by the personal health record system from said patient via the Internet;

(c) inserting to the PHR system an entry into said personal/individual health record based on input received by the personal health record system from said health care provider via the Internet;

(d) associating at the PHR system an access list with each user capable of accessing said personal/individual health record of said patient, wherein said access list categorizes said personal/individual health record into a restricted set of entries and an accessible set of entries based on the universal health care concept codes associated with entries in said personal/individual health record;

(e) denying access at the PHR system to a user requesting an entry in the personal/individual health record if the requested entry is in the restricted set of entries;

(f) allowing access at the PHR system to a user requesting an entry in the personal/individual health record if the requested entry is in the accessible set of entries; and

(g) adjusting access rights at the PHR system in said access list based on input received by the personal health record system from said patient via the Internet.

### D.      United States Patent No. 7,831,446

22.      On November 9, 2010, United States Patent No. 7,831,446 ("the '446 Patent"), entitled "System for Communication of Health Care Data," was duly and legally issued to inventors Ralph A. Korpman, John C. Peterson, Cindy A. Post,  J. Dominic Wallen, and Malik M. Hasan by the USPTO after a full and fair examination.  The '446 Patent claims a priority date of October 11, 2000, based on Provisional Patent Application No. 60/239,860.

23.      HealthTrio is the owner of the entire right, title, and interest in and to the '446 Patent by assignment, and has the exclusive right to sue for infringement and recover damages for all past, present, and future infringement, including against Defendants.  A true and correct copy of the '446 Patent is attached as Exhibit D.

24.     The '446 Patent is generally directed to a computerized system that establishes connectivity between interested health care parties, including, but not limited to, providers, patients, and payors.

25.     By way of example only, Claim 17 recites one of the inventions disclosed in the '446 Patent:

> (17) A computer system to communicate health care data between a health care payor and a participant, the computer system comprising:
>
> an intermediary computer system configured to communicate with one or more legacy databases that store records of health care data and operated by one or more payor computer systems;
>
> wherein the intermediary computer system is configured to receive a request from a participant computer system and wherein the request initiates extracting the health care data from the payor computer system;
>
> wherein the intermediary computer system determines which health care data the participant computer is authorized to receive which is less than all of the health care data;
>
> wherein the intermediary computer system is configured to receive less than all of the health care data associated with a health care record extracted from the one or more legacy databases, as a plurality of selected health care data;
>
> wherein the plurality of selected health care data the intermediary computer system is configured to receive is of a type that each of the plurality of selected health care data is displayed in a separate field and all collectively stored in the one or more legacy databases; and wherein the intermediary system is configured to transfer the selected health care data over a data network to the participant computer system.

## E.     United States Patent No. 8,073,710

26.     On December 6, 2011, United States Patent No. 8,073,710 ("the '710 Patent"), entitled "System for Communication of Health Care Data," was duly and legally issued to

inventors Malik M. Hasan, J. Dominic Wallen, John C. Peterson, Cindy A. Post, and Ralph A. Korpman by the USPTO after a full and fair examination. The '710 Patent claims a priority date of October 11, 2000, based on Provisional Patent Application No. 60/239,860.

27. HealthTrio is the owner of the entire right, title, and interest in and to the '710 Patent by assignment, and has the exclusive right to sue for infringement and recover damages for all past, present, and future infringement, including against Defendants. A true and correct copy of the '710 Patent is attached as Exhibit E.

28. The '710 Patent is generally directed to a computerized system that establishes connectivity between interested health care parties, including, but not limited to, providers, patients, and payors, and, more particularly, normalizes health care data of various formats to provide for the exchange of the normalized data between the parties.

29. By way of example only, Claim 1 recites one of the inventions disclosed in the '710 Patent:

(1) A computer system to process health care data from one or more health care records from one or more sources related to a patient in order to communicate that health care data to a participant, the computer system comprising:

a computer configured to communicate with one or more databases that stores one or more health care records containing a plurality of health care data related to the patient;

wherein the databases are selected from a group consisting of an insurer database and a provider database;

wherein the computer is configured to communicate with the plurality of health care data related to the patient of a type where each of the health care data is displayed in a separate field;

wherein any of the plurality of health care data related to the patient which are intended to have the same meaning, are expressed in either different formats, or have not previously been subject to a normalized format;

wherein the normalized format is of a type that displays health care data from one or more sources associated with a single patient such that any health care data associated with that patient having the same meaning is expressed in the same format despite any prior formatting;

a rules engine that establishes the normalized format for health care data associated with the patient and predetermines how each of the plurality of selected health care data is to appear in its respective field to send to the participant;

wherein fields in the normalized format that correspond to the fields containing the health care data for the patient not expressed as predetermined by the normalized format is remodeled to be expressed as predetermined by the normalized format becoming normalized data; and

wherein the computer is configured to transfer the normalized data over a data network to a participant computer system.

**F.      United States Patent No. 8,214,234**

30.     On July 3, 2012, United States Patent No. 8,214,234 ("the '234 Patent"), entitled "Method and System for Generating Personal/Individual Health Records," was duly and legally issued to inventors Malik M. Hasan, John C. Peterson, and J. Dominic Wallen by the USPTO after a full and fair examination.  The '234 Patent claims a priority date of October 11, 2000, based on Provisional Patent Application No. 60/239,860.

31.     HealthTrio is the owner of the entire right, title, and interest in and to the '234 Patent by assignment, and has the exclusive right to sue for infringement and recover damages for all past, present, and future infringement, including against Defendants.  A true and correct copy of the '234 Patent is attached as Exhibit F.

32.    The '234 Patent is generally directed to computerized methods and systems for generating PHR gathered and compiled from diverse data sources including, but not limited to, payor claims data, patient questionnaires or direct input, laboratories, imaging centers, and freestanding out-patient facilities, hospitals, and physicians.

33.    By way of example only, Claim 15 recites one of the inventions disclosed in the '234 Patent:

> (15) A personal health record ("PHR") system server for use with a patient enrolled in a health plan of a payor, wherein the health plan covers at least a portion of the cost of the patient when a patient undergoes encounters with a plurality of health care providers regarding a health related issue of the patient, wherein under the plan the health care providers request payment for at least a portion of the cost for the encounters from the payor, wherein the plan requires the health care providers to submit health related information of the patient to the payor to support the cost of encounters with the patient, the PHR system server comprising:
>
> a memory for storing instructions and data associated with a personal/individual health record of the patient;
>
> and a processor configured to execute the instructions, wherein the instructions cause the processor to perform the steps comprising:
>
> (a) transferring payor claims data of the patient to the ("PHR") system server;
>
> (b) analyzing said payor claims data to determine which portion of said payor claims data concerning the patient is encounter data comprising at least one of a diagnosis or a treatment or a medication or a procedure or a history of office visits of the patient with one or more of the health care providers;
>
> (c) populating the personal/individual health record of the patient by storing one or more entries into the personal/individual health record of the patient based on the encounter data, wherein population of at least a portion of the entries in the personal/individual health record of the patient is encounter data extracted from the payor claims data;

13

(d) organizing the personal/individual health record by associating together one or more entries in the personal/individual health record of the patient that are related; and

(e) providing a web-based portal accessible by the patient to view the personal/individual health record of the patient.

**G.    United States Patent No. 8,229,760**

34.    On July 24, 2012, United States Patent No. 8,229,760 ("the '760 Patent"), entitled "System for Communication of Health Care Data," was duly and legally issued to inventors Malik M. Hasan, J. Dominic Wallen, John C. Peterson, Cindy A. Post, and Ralph A. Korpman by the USPTO after a full and fair examination. The '760 Patent claims a priority date of October 11, 2000, based on Provisional Patent Application No. 60/239,860.

35.    Plaintiff HealthTrio is the owner of the entire right, title, and interest in and to the '760 Patent by assignment, and has the exclusive right to sue for infringement and recover damages for all past, present, and future infringement, including against Defendants. A true and correct copy of the '760 Patent is attached as Exhibit G.

36.    The '760 Patent is generally directed to a computerized system that establishes connectivity between interested health care parties, including, but not limited to, providers, patients, and payors, and, more particularly, normalizes health care data of various formats to provide for the exchange of the normalized data between the parties.

37.    By way of example only, Claim 1 recites one of the inventions disclosed in the '760 Patent:

(1) A computer system to extract and integrate health care data from a health care payor, the computer system comprising:

a computer configured to communicate with one or more payor computer systems from one or more payors;

14

wherein the computer is configured to communicate with each of the one or more payor computer systems of a type that includes one or more databases storing records of health care data of a type that are displayed in separate fields;

wherein the computer is configured to receive the health care data also of a type related to claims information from at least one payor computer system from the one or more payors;

wherein the computer is configured to receive the claim information of a type that is organized for use by the one or more payors;

wherein a normalized format is of a type that displays health care data from one or more sources such that any health care data associated with a health care record having the same meaning will be expressed in the same format despite any prior formatting; and

a staging database in communication with the computer;

wherein the staging database is configured to receive the claims information from each of the payor computer systems;

wherein the claims information from each of the one or more payor computer systems are configured to convert into the normalized format by a normalization system comprising:

a rules engine that establishes the predefined format, predetermines how each of the plurality of health care data is to appear in its respective field, and remodels any of the health care data that is not expressed as predetermined by the normalized format into the normalized format becoming normalized data such that all normalized data expressing information having the same meaning now expresses that meaning in the same format.

**H.    United States Patent No. 8,265,954**

38.    On September 11, 2012, United States Patent No. 8,265,954 ("the '954 Patent"), entitled "System for Communication of Health Care Data," was duly and legally issued to inventors Malik M. Hasan, J. Dominic Wallen, John C. Peterson, Cindy A. Post, and Ralph A.

Korpman by the USPTO after a full and fair examination. The '954 Patent claims a priority date of October 11, 2000, based on Provisional Patent Application No. 60/239,860.

39.     HealthTrio is the owner of the entire right, title, and interest in and to the '954 Patent by assignment, and has the exclusive right to sue for infringement and recover damages for all past, present, and future infringement, including against Defendants. A true and correct copy of the '954 Patent is attached as Exhibit H.

40.     The '954 Patent is generally directed to a computerized system that establishes connectivity between interested health care parties, including, but not limited to, providers, patients, and payors, normalizes health care data of various formats to provide for the exchange of the normalized data between the parties, and identifies meaningful relationships and patterns in treatments to facilitate care management.

41.     By way of example only, Claims 1 and 3 recite two of the inventions disclosed in the '954 Patent:

(1)     A computer system that extracts health care data from one or more health care payors to identify meaningful relationships or patterns in treatments to compare the effectiveness of various treatment of specific diseases, the computer system compromising:

a computer configured to communicate with one or more payor computer systems from one or more payors over the Internet;

wherein the payor computer systems are of a type that includes one or more databases storing records of the health care data;

wherein a normalized format is of a type that displays health care data from one or more sources such that any health care data having the same meaning will be expressed in the same format despite any prior formatting;

a staging database in communication with the computer;

wherein the staging database is configured to receive the health care data from each of the payor computer systems;

wherein the health care data from each of the payor computer systems is configured to be converted into the normalized format by a normalization system comprising: a rules engine that predetermines how each of the health care data is to appear in its respective field, and remodels any health care data not expressed as predetermined by the normalized format into the normalized format becoming normalized data such that all normalized data expressing information having the same meaning now expresses that meaning in the same format; and

wherein the normalized data is made available to determine comparative effectiveness of various treatments of specific diseases.

(3)   A computer system that extracts health care data from a health care payor to identify meaningful relationships or patterns in treatments which are not optimal for quality care, the computer system comprising:

a staging database in communication with the computer configured to receive health care data from a payor legacy computer system;

wherein the payor legacy computer system is of a type that includes one or more databases storing records of the health care data;

wherein a normalized format is of a type that displays health care data from one or more sources such that any health care data having the same meaning will be expressed in the same format despite any prior formatting;

wherein the health care data from the payor computer system is configured to be converted into the normalized format by a normalization system comprising:

a rules engine that predetermines how each of the health care data is to appear in its respective field, and remodels any health care data not expressed as predetermined by the normalized format into the normalized format becoming normalized data such that all normalized data expressing information having the same meaning now expresses that meaning in the same format; and

wherein the normalized data is made available to set up or modify clinical care management protocols to deliver optimal care.

I.     **United States Patent No. 8,131,563**

42.     On March 6, 2012, United States Patent No. 8,131,563 ("the '563 Patent"), entitled "Method and System for Generating Personal/Individual Health Records," was duly and legally issued to inventors Malik M. Hasan, John C. Peterson, and J. Dominic Wallen by the USPTO after a full and fair examination.  The '563 Patent claims a priority date of October 11, 2000, based on Provisional Patent Application No. 60/239,860.

43.     HealthTrio is the owner of the entire right, title, and interest in and to the '563 Patent by assignment, and has the exclusive right to sue for infringement and recover damages for all past, present, and future infringement, including against Defendants.  A true and correct copy of the '563 Patent is attached as Exhibit I.

44.     The '563 Patent is generally directed to computerized methods and systems for generating PHR gathered and compiled from diverse data sources including, but not limited to, payor claims data, patient questionnaires or direct input, laboratories, imaging centers, and freestanding out-patient facilities, hospitals, and physicians.

45.     By way of example only, Claims 2 and 4 recite two of the inventions disclosed in the '563 Patent:

> (2)   A computerized method for analyzing an electronic health record, said method comprising the steps of:
>
> (a) transferring payor claims data regarding a plurality of patients of a payor to an electronic health record system server, wherein a plurality of patients enrolled in a health plan of the payor undergo encounters with a plurality of health care providers regarding a health related issue of the patients, wherein under the health plan the health care providers request payment for at least a portion of the cost for the encounters from the payor, wherein the health plan requires health care providers to submit health related information of the patients to the payor to support the cost of encounters with the patient;

(b) analyzing at the electronic health record system server said payor claims data concerning a respective patient of the plurality of patients to determine which portion of said payor claims data is encounter data comprising one or more of a diagnosis of the respective patient, a treatment of the respective patient, a medication of the respective patient, a procedure of the respective patient, a history of office visits of the respective patient with one or more of the health care providers, or duration of office visits of the respective patient;

(c) creating at the electronic health record system server electronic health records concerning the plurality of patients by storing one or more entries into the respective patient's electronic health record based on the encounter data, wherein initial population of the electronic health records of the patients is based solely on the encounter data extracted from the payor claims data;

(d) organizing, at the electronic health record system server, the health records by associating together one or more entries in the respective patient's electronic health record that are related; and

(e) analyzing the electronic health care records by measuring the outcomes of specific treatments of diseases under investigation and providing a direct comparison of outcomes measured of a specific treatment with various other treatments to allow setting up or modification of clinical protocols.

(4) An electronic health record system server for use with analyzing electronic health records of a plurality of patients enrolled in a health plan of the payor, wherein the patients undergo encounters with a plurality of health care providers regarding a health related issue of the patients, wherein under the health plan the health care providers request payment for at least a portion of the cost for the encounters from the payor, wherein the health plan requires health care providers to submit health related information of the patients to the payor to support the cost of encounters with the patient, the electronic health record system server comprising:

a memory for storing instructions and data associated with electronic health records of a plurality of patients; and

a processor configured to execute the instructions, wherein the instructions cause the processor to perform the steps comprising:

(a) transferring payor claims data regarding the plurality of patients to an electronic health record system server;

(b) analyzing at the electronic health record system server said payor claims data concerning a respective patient of the plurality of patients to determine which portion of said payor claims data is encounter data comprising one or more of a diagnosis of the respective patient, a treatment of the respective patient, a medication of the respective patient, a procedure of the respective patient, a history of office visits of the respective patient with one or more of the health care providers, or duration of office visits of the respective patient;

(c) creating at the electronic health record system server electronic health records concerning the plurality of patients by storing one or more entries into the respective patient's electronic health record based on the encounter data, wherein initial population of the electronic health records of the patients is based solely on the encounter data extracted from the payor claims data;

(d) organizing, at the electronic health record system server, the health records by associating together one or more entries in the respective patient's electronic health record that are related; and

(e) analyzing the electronic health care records by measuring the outcomes of specific treatments of diseases under investigation and providing a direct comparison of outcomes measured of a specific treatment with various other treatments to allow setting up or modification of clinical protocols.

## J.    United States Patent No. 8,321,239

46.    On November 27, 2012, United States Patent No. 8,321,239 ("the '239 Patent"), entitled "System for Communication of Health Care Data," was duly and legally issued to inventors Malik M. Hasan, J. Dominic Wallen, John C. Peterson, Cindy A. Post, and Ralph A. Korpman by the USPTO after a full and fair examination.  The '239 Patent claims a priority date of October 11, 2000, based on Provisional Patent Application No. 60/239,860.

47.    HealthTrio is the owner of the entire right, title, and interest in and to the '239 Patent by assignment, and has the exclusive right to sue for infringement and recover damages

for all past, present, and future infringement, including against Defendants.  A true and correct copy of the '239 Patent is attached as Exhibit J.

48.     The '239 Patent is generally directed to a computerized system that establishes connectivity between interested health care parties, including, but not limited to, providers, patients, and payors, and, more particularly, normalizes health care data of various formats to provide for the exchange of the normalized data between the parties.

49.     By way of example only, Claims 1, 6, 7, and 8 recite four of the inventions disclosed in the '239 Patent:

(1)   A computer system to process health care data from one or more health care records from one or more sources related to a patient in order to communicate that health care data between a health care provider and payor, the computer system comprising:

an intermediary computer configured to communicate with one or more databases that stores one or more health care records containing a plurality of health care data related to the patient;

wherein the databases are selected from a group consisting of a payor database and a provider database;

wherein the intermediary computer is configured to communicate with the plurality of health care data related to the patient of a type where each of the health care data is displayed in a separate field;

wherein any of the plurality of health care data related to the patient which are intended to have the same meaning, are expressed in either different formats, or have not previously been subject to a normalized format;

wherein the normalized format is of a type that displays health care data from one or more sources associated with a single patient such that any health care data associated with that patient having the same meaning is expressed in the same format despite any prior formatting;

a staging database that is part of the intermediary computer and that is configured to receive the plurality of selected health care data;

a rules engine that establishes the normalized format for health care data associated with the patient and predetermines how each of the plurality of selected health care data is to appear in its respective field to send to the participant;

wherein fields in the normalized format that correspond to the fields containing the health care data for the patient not expressed as predetermined by the normalized format is remodeled to be expressed as predetermined by the normalized format becoming normalized data; and

wherein the plurality of health care data related to the patient comprises claims data that is normalized into claims data in normalized format which is available to be transferred to the payor over a data network.

(6)  A computer system to process health care data from one or more health care records from one or more sources related to a patient in order to communicate that health care data between a health care provider and payor, the computer system comprising:

an intermediary computer configured to communicate with one or more databases that stores one or more health care records containing a plurality of health care data related to the patient;

wherein the databases are selected from a group consisting of a payor database and a provider database;

wherein the intermediary computer is configured to communicate with the plurality of health care data related to the patient of a type where each of the health care data is displayed in a separate field;

wherein any of the plurality of health care data related to the patient which are intended to have the same meaning, are expressed in either different formats, or have not previously been subject to a normalized format;

wherein the normalized format is of a type that displays health care data from one or more sources associated with a single patient such that any health care data associated with that patient having the same meaning is expressed in the same format despite any prior formatting;

a rules engine that establishes the normalized format for health care data associated with the patient and predetermines how each of the plurality of selected health care data is to appear in its respective field to send to the participant;

wherein fields in the normalized format that correspond to the fields containing the health care data for the patient not expressed as predetermined by the normalized format is remodeled to be expressed as predetermined by the normalized format becoming normalized data;

and wherein the plurality of health care data related to the patient comprises claims data that is normalized into claims data in normalized format which is available to be transferred to the payor over a data network.

(7) The computer system of claim 6, wherein the claims data in normalized format is transferrable to the payor to adjudicate the claim and remit payment.

(8) The computer system of claim 6, wherein the claims data in normalized format is transferrable to the payor to adjudicate the claim and explain benefits.

## IV.   FACTUAL BACKGROUND

**A.   HealthTrio Created and Developed Pioneering
Health Information Technology Solutions**

50.   Generally speaking, the technology and inventions disclosed in the Patents-in-Suit are directed toward connecting all health care participants to improve the quality of care, decrease costs, and streamline administrative processes in health care.  The solutions facilitate the real–time sharing of medical information via easy-to-access online portals for health care consumers, their health care providers, and health care insurance companies.  Such solutions are now considered best practices for health care environments throughout the United States to promote compliance with recent federal regulations regarding the digitization of medical records.

51.   Dr. Malik M. Hasan, co-inventor of the '494, '904, '264, '446, '710, '234, '760, '954, '563, and '239 Patents and founder and CEO of HealthTrio, is a well-known pioneer and innovator in the U.S. health care industry.  A former practicing neurologist who immigrated to

the United States in the early 1970s, Dr. Hasan holds degrees from King Edward Medical College of Lahore, Pakistan, Royal College of Physicians in Edinburgh, and the Royal College of Physicians of London.   He is a certified member of the American Association of Electromyography and Electrodiagnosis and a diplomat of the American Board of Psychiatry and Neurology.

52.   As a board-certified neurologist in Colorado since June 1975, Dr. Hasan maintained his private practice until July 1992, while concurrently overseeing the administration of QualMed, the HMO he founded (later HealthNet) since its inception.   HealthNet is the only successful, publicly traded national health plan in the United States founded by an individual without sponsorship from any existing major insurance companies, hospital systems, federal grants or loans, or venture capital firm funding.

53.   Dr. Hasan is recognized nationally as an advocate for innovative medical management, particularly the digitization of medical records and enabling easy access and exchange of medical records among health care participants.   Dr. Hasan was awarded a medal for innovation in health information technology from the Computerworld Smithsonian Awards. His submission is now included in the Smithsonian Institution Permanent Collection of Information Technology Innovation at the National Museum of American History.   His health care technology initiatives, for which he was awarded the prestigious C. Everett Koop National Health Award, are now parts of case studies in various management texts as well as business school materials.   Dr. Hasan has appeared as a keynote speaker at various forums, including a Harvard University conference on health care.   The Governor of Colorado appointed him to the

Colorado Health Data Commission, and he has since served on numerous national commissions related to improvements to the U.S. health care system and industry.

54.     Following his extensive years of pioneering work in the fields of medicine, managed care, and health care informatics, Dr. Hasan left managed care and founded Monument Systems, Inc., a company dedicated to providing Internet-based, as well as non-Internet-based, connectivity solutions for health care providers, health plans, consumers and employers.   In 2007, Dr. Hasan formed HealthTrio, LLC, to provide further health care information technology solutions.   In 2009, to accommodate the different business model and management needs of HealthTrio's *xpress* product, Monument Systems, LLC, was formed as a separate and distinct Colorado entity to run the *xpress* product.

55.     HealthTrio was built on Dr. Hasan's and the co-inventors' experience and deep insight into the needs of providers, patients, and insurance companies, and knowledge of the financial transactions underlying health care delivery systems and the system requirements to extract and deliver meaningful solutions using current medical record keeping.   Their vision for modernizing and improving health care included connecting providers, payors, and patients via browser-based portals to increase communication and data-sharing among the participants—enabling participants to quickly access the information they need to deliver and receive quality health care efficiently and cost-effectively.

56.     The present inventions are embodied in HealthTrio's product portfolio, which includes a suite of solutions, or portals, that can be utilized as stand-alone products or bundled together, including:

HealthTrio connect™ (http://www.healthtrio.com/connect.php)

An online self-service web portal to help "facilitate online information and transaction exchanges between a health plan and its members and its trading partners, including providers, employers and brokers. Administrative functions include enrollment, management of eligibility and benefits information, claims processing, reporting, payment, treatment authorizations, premium billing and reconciliation."

HealthTrio personal health record (PHR) (http://www.healthtrio.com/phr.php)

Real-time, "online access to [patient] test results, medical history, as well as medical and drug claims information. The PHR allows members to fully participate in managing their health information, as well as interact electronically with their providers. . . ." "[L]ongitudinal patient record data is drawn from claims, lab, HRA, PBM, and other third party sources as well as member input. This unique collaboration of information allows physicians to have a single source for all medical information."

HealthTrio Total EHR™ (http://www.healthtrio.com/ehr.php)

HIPPA compliant software created for providers dissatisfied with their current electronic health records software. Features include population management, e-prescribing, computerized patient order entry, insurance eligibility check, capability to send patient reminders, electronic claim submission, referral tracking, and capacity to provide patients with electronic access to their health information as well as an electronic copy of their health information.

HealthTrio MyMedicalHome™ (http://www.healthtrio.com/myMedicalHome.php)

Designed for the Patient Centered Medical Home (PCMH) and Accountable Care Organizations (ACOs). Supports transitions of care by alerting the care team providers between care settings (primary to acute to long-term care) so appropriate outpatient management can be put into place to achieve better patient outcomes. Provides real-time clinical decision support data, patient engagement and population management capabilities necessary to optimize patient outcomes.

HealthTrio wellness and prevention programs (http://www.healthtrio.com/wellness.php)

Utilizing claims and clinical information, member entered information, and health risk assessments, HealthTrio is able to identify specific members with risk conditions such as diabetes, heart disease, certain cancers or depression as well as target members for wellness and prevention programs. Once identified, HealthTrio's wellness and prevention programs provide: Educational content,

member ability to import health risk assessments from any third–party vendor, patient reminders, health calendars, health trackers, interactive, web–based self-management programs, rewards and incentives programs, and care plans for health.

57.     Pursuant to 35 U.S.C. § 287, all of the above-mentioned HealthTrio products and solutions have been substantially and continuously marked with the patent numbers of all of the Patents-in-Suit.

**B.      Aetna Entered the Market with Products that Compete with HealthTrio's Product Offerings and Infringe the Patents-in-Suit**

58.     Through various strategic acquisitions totaling nearly One Billion Dollars, Aetna created its current health information technology product line which makes, uses, sells and offers to sell health information technology solutions and products.   Aetna's HIT solutions are allegedly intended to make "care coordination and secure information sharing a reality."[1]

59.     Aetna's HIT solutions and products include, but are not limited to, Aetna's Personal Health Record utilizing ActiveHealth's CareEngine, MyActiveHealth PHR, NaviNet administrative portal (including claims submissions, eligibility verification, and claim adjudication), ActiveHealth's care management solutions, branded as CareEngine and/or Care Considerations, Accountable Care Solutions from Aetna, Medicity health information exchange ("HIE"), technology framework and platform for achieving semantic interoperability, and cloud services, including, but not limited to, Medicity's ProAccess and MediTrust products and services.

---

[1] Aetna ActiveHealth Management / 'Knowledge Flow' (white board animation), http://www.youtube.com/watch?v=CVuYH_pNsvM (last visited Dec. 11, 2012).

60.     In May 2005, Aetna acquired ActiveHealth, a health management and health care data analytics company for approximately $400 million.   ActiveHealth is a wholly owned subsidiary of Aetna which operates as a branded, standalone business.     Through the ActiveHealth acquisition, Aetna acquired ActiveHealth's CareEngine system which "compiles member data from a variety of sources such as medical and pharmacy claims, lab results and information provided directly from the member."[2]

61.     ActiveHealth is the assignee of U.S. Patent Application No. 12/418,607 (a divisional of Application No. 10/885,610, now abandoned) filed April 5, 2009, entitled "Care Engine," which cites a number of HealthTrio's Patents-in-Suit, including, but not limited to, the '494 and '904 Patents.   Additionally, Lonny Reisman, founder of ActiveHealth, is the named inventor of U.S. Patent Application Nos. 11/749,654 (filed May 16, 2007—currently on appeal) and 12/038,536 (filed Feb. 27, 2008—rejected), which also cite a number of HealthTrio's Patents-in-Suit, including, but not limited to, the '494 and '904 Patents.   ActiveHealth is the assignee of the 12/038,536 application.

62.     In January 2011, Aetna acquired Medicity, an HIE company, for approximately $490 million.   According to Aetna's Annual Report to Shareholders, the Medicity acquisition "enables [Aetna] to offer a set of convenient, easy-to-access technology solutions for physicians, hospitals and other health care providers."[3]   Medicity's "portfolio of standards-based software and services uses a service-oriented architecture to enable the electronic sharing of clinical data

---

[2] ActiveHealth Management, CareEngine System, http://www.activehealth.com/activehealth-careengine.php (last visited Dec. 3, 2012); *see also* ActiveHealth Management, CareEngine and CDS, http://www.activehealth.com/node/27 (last visited Dec. 11, 2012).

[3] AETNA, INC., 2011 AETNA ANNUAL REPORT, FINANCIAL REPORT TO SHAREHOLDERS (2011).

between organizations."[4] Medicity's interoperability products and solutions include, but are not limited to, reference terminology services, data standardization and mapping of terminologies. The offerings perform a variety of functions such as enabling clinical decision support, "data aggregation;" "record locator services;" "identity management solutions;" "access to information from portals and EHRs;" "data services to standardize and format proprietary data into standard vocabularies and formats;" "filtered and formatted data for analytics and reporting;" and "gateway services to external networks and sources such as the National Health Information Network (NHIN), payers, Personal Health Records (PHR) vendors, and others."[5] The technology enables secure communication between providers for the distribution and receipt of clinical information and "employ[s] persistent, message-based communication to enable providers to collaborate electronically."[6]

63. Utilizing ActiveHealth, Medicity, and other health information technology products and services, Aetna offers a "suite of tools and resources" to help Medicare health care providers build and operate a customized infrastructure through its Accountable Care Solutions from Aetna website.[7]

---

[4] *Medicity Technology Innovation*, MEDICITY INK, *available at* http://64.245.154.152/Images/PDFs/Medicity_Ink_Web.pdf (last visited Dec. 11, 2012).

[5] Medicity.com, Client-Cloud Computing, http://64.245.154.152/Technology/Client-Cloud_Computing.aspx (follow Technology, Client-Cloud Computing hyperlink) (last visited Dec. 11, 2012).

[6] Medicity.com, About Medicity: Technology, http://www.medicity.com/technology.html (last visited Dec. 11, 2012).

[7] Accountable Care Solutions from Aetna, http://www.aetnaacs.com/the-aetna-perspective.html (last visited Dec. 11, 2012).

64.     On or about October 3, 2006, Aetna introduced its own PHR powered by ActiveHealth's CareEngine System.   Aetna has utilized ActiveHealth's CareEngine core technology (initially privately-labeled as Aetna's "MedQuery" program) since at least 2002.

65.     In or about late 2006, Aetna requested a demonstration of HealthTrio's PHR for a potential business relationship and sought information about the performance of HealthTrio's PHR.   HealthTrio demonstrated its patent-pending PHR to Aetna executives in or about December 2006 in Hartford, Connecticut, and further held a meeting with Aetna technical representatives in or about February 2007 in Blue Bell, Pennsylvania.   During these meetings, HealthTrio representatives demonstrated the various features of HealthTrio's PHR, disclosed that HealthTrio had filed patent applications on its technology, and answered Aetna's technical questions.   But, soon after the February 2007 meeting, Aetna discontinued communications with HealthTrio and did not pursue a business relationship.

66.     Aetna's infringing PHR provides a patient web-portal which provides an online member destination for organizing, storing, and reviewing individual and family health care data. The PHR is pre-populated with member claims data, laboratory test results, prescription drug data and can be supplemented with health care data, such as immunizations and over-the-counter drugs, by direct input by the patient.[8]   Aetna-affiliated providers can also access patients' PHRs

---

[8] Aetna's Personal Health Record, http://www.aetna.com/showcase/phr/ (last visited Dec. 11, 2012).

via a "View Personal Health Record" transaction on the Aetna NaviNet online portal once patients have granted the provider access to the PHR.[9]

67.     Aetna promotes several benefits of its PHR, including the ability of Aetna members to securely view, store, and organize their health care data in one place; share their data with a physician or family member; print their data; and receive personalized alerts and care recommendations based on the continuous evaluation by the CareEngine of their personal health care data against aggregated patient health care data and national best practices.[10]

68.     Aetna touts that "[t]he CareEngine clinical decision support system compares the most up-to-date, evidence-based clinical guidelines to an individual patient's data in order to identify clinical interventions and issue clinical recommendations—called Care Considerations—spanning a wide range of disease categories."[11]   If analysis of patient data reveals an opportunity for better care or a medical concern, an alert appears in the PHR and may be communicated to the patient's health care provider.[12]

69.     Aetna's HIT product line, including its PHR and administrative portal solutions, provide significant financial benefits to Aetna.   At a minimum, according to a 2005 peer-reviewed study, Aetna realizes cost savings of $8.07 per member per month in paid claims, and

---

[9] NaviNet, PHR Quick Tips, http://www.navinet.net/aetnaclinical/office_staff_phr_tips.htm (last visited Dec. 11, 2012).

[10] Aetna's Personal Health Record, http://www.aetna.com/showcase/phr/, (last visited Dec. 11, 2012).

[11] Press Release, ActiveHealth Management, New Study Shows Computerized Decision Support System Reduces Medical Errors and Cuts Healthcare Costs (Feb. 10, 2005), available at http://www.activehealth.com/press/new-study-shows-computerized-decision-support-system-reduces-medical-errors-and-cuts.

[12] See Aetna's Personal Health Record, http://www.aetna.com/showcase/phr/ (follow "Cutting-edge technology" hyperlink) (last visited Dec. 11, 2012).

8.4% fewer hospitalizations from the CareEngine System alone.[13]   A similar evaluation of Aetna's MedQuery program revealed "healthcare plan savings of approximately $10 per employee [patient] per month."[14]   On information and belief, Defendants receive cost-savings and other monetary benefits from their complete suite of infringing products and services that exceed the previously stated amounts.

70.    As described in more detail below, Defendants' products and services (including, but not limited to, current and legacy products such as the PHR, as well as those from acquisitions, such as the ActiveHealth CareEngine and MedQuery products, NaviNet administrative portal, and Accountable Care Solutions from Aetna), infringe one or more claims of each of the Patents-in-Suit.

## V.    FIRST CLAIM FOR RELIEF
### (Infringement of U.S. Patent No. 7,428,494)

71.    HealthTrio refers to and incorporates herein the allegations of paragraphs 1 through 70.

72.    Defendants have directly infringed and continue to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '494 Patent by making, using, selling, or offering to sell in the United States certain methods or systems disclosed and claimed in the '494 Patent, specifically including, but not limited to, Aetna's CareEngine-powered Personal Health Record; MyActiveHealth PHR; CareEngine System;

---

[13] *See* The Aetna Perspective, Accountable Care Solutions from Aetna, http://www.aetnaacs.com/the-aetna-perspective.html (last visited Dec. 11, 2012).
[14] Campbell Soup Company's 2011 Update of the Corporate Social Responsibility Report Summary, http://www.campbellsoupcompany.com/csr/employees_workplace_health.asp (last visited Dec. 11, 2012).

MedQuery program; NaviNet administrative portal; Accountable Care Solutions products and services that are described and promoted on Defendants' websites; Medicity's interoperability platform and cloud services, including, but not limited to, Medicity's ProAccess and MediTrust products and services; terminology services platform; health exchange solutions; and technology framework for achieving semantic interoperability.   Defendants are thus liable for direct infringement of the '494 Patent pursuant to 35 U.S.C. § 271(a).

73.    In addition to or in the alternative to direct infringement, Defendants have also induced and contributed and continue to induce and contribute to their customers' direct infringement of the '494 Patent by selling, making or configuring computer-based applications, systems, and methods that embody the patented inventions or components thereof claimed in the '494 Patent.

74.    In particular, on information and belief, Defendants actively, knowingly and intentionally induce their customers to infringe the patented inventions claimed in the '494 Patent by, among other things, providing architecture, technical support, or assisting their customers to use infringing computer-based applications, systems, and methods; and by instructing, facilitating or assisting their customers on how to use Defendants' infringing computer-based applications, systems, and methods.

75.    On information and belief, Defendants provide non-public technical support and documentation to their customers.  Since at least from the time ActiveHealth filed patent applications citing the '494 and '904 Patents, Defendants have known that their systems and components are used by their customers in an infringing manner or have been and continue to be willfully blind to such infringing use and have acted with the specific intent to encourage and

76. Furthermore, on information and belief, Defendants offer to sell and sell (directly or through intermediaries or authorized agents under Defendants' control) to customers and potential customers in this Judicial District and elsewhere in the United States, component parts of HealthTrio's patented inventions, including, without limitation, software applications, technical support, and website development.[15] On information and belief, Defendants' components are designed to be used with and connected to other interoperable components, which are further intended to enable Defendants' customers to make and use computer-based applications, systems, and methods that infringe the '494 Patent. Defendants' components are specifically adapted for use in computer-based applications, systems, and methods that infringe the '494 Patent, and such components constitute material aspects of infringing computer-based applications that are not staple articles or commodities of commerce suitable for substantial non-infringing uses, all of which is known to Defendants. Since at least from the time ActiveHealth filed patent applications citing the '494 and '904 Patents, Defendants have known that their customers have used and continue to use Defendants' components in a manner that directly infringes the '494 Patent, or have been and continue to be willfully blind to their customers' infringing use. Defendants are thus liable for contributory infringement of the '494 Patent pursuant to 35 U.S.C. § 271(c).

---

[15] *See* Aetna, Accountable Care Solutions, http://www.aetnaacs.com/ (last visited Dec. 11, 2012).

77.     In addition, on information and belief, Defendants have infringed and are infringing the '494 Patent with knowledge of HealthTrio's patent rights, at least from the time ActiveHealth filed patent applications citing the '494 and '904 Patents, and with knowledge that Defendants' accused products infringe the '494 Patent.  Defendants' acts of infringement have been and continue to be willful, deliberate, and in reckless disregard of HealthTrio's patent rights.

78.     HealthTrio has suffered and continues to suffer damages as a result of Defendants' direct and indirect infringement of the '494 Patent.  Pursuant to 35 U.S.C. § 284, HealthTrio is entitled to recover damages from Defendants for their infringing acts in an amount subject to proof at trial, but no less than a reasonable royalty.  HealthTrio is further entitled to enhanced damages for Defendants' acts of willful patent infringement pursuant to 35 U.S.C. § 284.

79.     Defendants' infringement of the '494 Patent has damaged and will continue to damage HealthTrio, causing irreparable harm for which there is no adequate remedy at law, unless Defendants are enjoined by this Court.

## VI.     SECOND CLAIM FOR RELIEF
### (Infringement of U.S. Patent No. 7,440,904)

80.     HealthTrio refers to and incorporates herein the allegations of paragraphs 1 through 79.

81.     Defendants have directly infringed and continue to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '904 Patent by making, using, selling, or offering to sell in the United States certain methods or systems disclosed and claimed in the '904 Patent, specifically including, but not limited to, Aetna's

CareEngine-powered Personal Health Record; MyActiveHealth PHR; CareEngine System; MedQuery program; NaviNet administrative portal; Accountable Care Solutions products and services that are described and promoted on Defendants' websites; Medicity's interoperability platform and cloud services, including, but not limited to, Medicity's ProAccess and MediTrust products and services; terminology services platform; health exchange solutions; and technology framework for achieving semantic interoperability.  Defendants are thus liable for direct infringement of the '904 Patent pursuant to 35 U.S.C. § 271(a).

82.    In addition to or in the alternative to direct infringement, Defendants have also induced and contributed and continue to induce and contribute to their customers' direct infringement of the '904 Patent by selling, making or configuring computer-based applications, systems, and methods that embody the patented inventions or components thereof claimed in the '904 Patent.

83.    In particular, on information and belief, Defendants actively, knowingly and intentionally induce their customers to infringe the patented inventions claimed in the '904 Patent by, among other things, providing architecture, technical support, or assisting their customers to use infringing computer-based applications, systems, and methods; and by instructing, facilitating or assisting their customers on how to use Defendants' infringing computer-based applications, systems, and methods.

84.    On information and belief, Defendants provide non-public technical support and documentation to their customers.  Since at least from the time ActiveHealth filed patent applications citing the '494 and '904 Patents, Defendants have known that their systems and components are used by their customers in an infringing manner or have been and continue to be

willfully blind to such infringing use and have acted with the specific intent to encourage and facilitate such infringing use. Defendants are thus liable for inducing their customers to infringe the '904 Patent pursuant to 35 U.S.C. § 271(b).

85.     Furthermore, on information and belief, Defendants offer to sell and sell (directly or through intermediaries or authorized agents under Defendants' control) to customers and potential customers in this Judicial District and elsewhere in the United States, component parts of HealthTrio's patented inventions, including, without limitation, software applications, technical support, and website development. [16]   On information and belief, Defendants' components are designed to be used with and connected to other interoperable components, which are further intended to enable Defendants' customers to make and use computer-based applications, systems, and methods that infringe the '904 Patent. Defendants' components are specifically adapted for use in computer-based applications, systems, and methods that infringe the '904 Patent, and such components constitute material aspects of infringing computer-based applications that are not staple articles or commodities of commerce suitable for substantial non-infringing uses, all of which is known to Defendants. Since at least from the time ActiveHealth filed patent applications citing the '494 and '904 Patents, Defendants have known that their customers have used and continue to use Defendants' components in a manner that directly infringes the '904 Patent, or have been and continue to be willfully blind to their customers' infringing use. Defendants are thus liable for contributory infringement of the '904 Patent pursuant to 35 U.S.C. § 271(c).

---

[16] *See* Aetna, Accountable Care Solutions, http://www.aetnaacs.com/ (last visited Dec. 11, 2012).

86.     In addition, on information and belief, Defendants have infringed and are infringing the '904 Patent with knowledge of HealthTrio's patent rights, at least from the time ActiveHealth filed patent applications citing the '494 and '904 Patents, and with knowledge that Defendants' accused products infringe the '904 Patent.  Defendants' acts of infringement have been and continue to be willful, deliberate, and in reckless disregard of HealthTrio's patent rights.

87.     HealthTrio has suffered and continues to suffer damages as a result of Defendants' direct and indirect infringement of the '904 Patent.  Pursuant to 35 U.S.C. § 284, HealthTrio is entitled to recover damages from Defendants for their infringing acts in an amount subject to proof at trial, but no less than a reasonable royalty.  HealthTrio is further entitled to enhanced damages for Defendants' acts of willful patent infringement pursuant to 35 U.S.C. § 284.

88.     Defendants' infringement of the '904 Patent has damaged and will continue to damage HealthTrio, causing irreparable harm for which there is no adequate remedy at law, unless Defendants are enjoined by this Court.

## VII.     THIRD CLAIM FOR RELIEF
### (Infringement of U.S. Patent No. 7,509,264)

89.     HealthTrio refers to and incorporates herein the allegations of paragraphs 1 through 88.

90.     Defendants have directly infringed and continue to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '264 Patent by making, using, selling, or offering to sell in the United States certain methods or systems disclosed and claimed in the '264 Patent, specifically including, but not limited to, Aetna's

CareEngine-powered Personal Health Record; MyActiveHealth PHR; CareEngine System; MedQuery program; NaviNet administrative portal; Accountable Care Solutions products and services that are described and promoted on Defendants' websites; Medicity's interoperability platform and cloud services, including, but not limited to, Medicity's ProAccess and MediTrust products and services; terminology services platform; health exchange solutions; and technology framework for achieving semantic interoperability.  Defendants are thus liable for direct infringement of the '264 Patent pursuant to 35 U.S.C. § 271(a).

91.    In addition to or in the alternative to direct infringement, Defendants have also induced and contributed and continue to induce and contribute to their customers' direct infringement of the '264 Patent by selling, making or configuring computer-based applications, systems, and methods that embody the patented inventions or components thereof claimed in the '264 Patent.

92.    In particular, on information and belief, Defendants actively, knowingly and intentionally induce their customers to infringe the patented inventions claimed in the '264 Patent by, among other things, providing architecture, technical support, or assisting their customers to use infringing computer-based applications, systems, and methods; and by instructing, facilitating or assisting their customers on how to use Defendants' infringing computer-based applications, systems, and methods.

93.    On information and belief, Defendants provide non-public technical support and documentation to their customers.  Since at least the date this lawsuit was filed, and on information and belief since an earlier time, Defendants have known that their systems and components are used by their customers in an infringing manner or have been and continue to be

willfully blind to such infringing use and have acted with the specific intent to encourage and facilitate such infringing use. Defendants are thus liable for inducing their customers to infringe the '264 Patent pursuant to 35 U.S.C. § 271(b).

94.     Furthermore, on information and belief, Defendants offer to sell and sell (directly or through intermediaries or authorized agents under Defendants' control) to customers and potential customers in this Judicial District and elsewhere in the United States, component parts of HealthTrio's patented inventions, including, without limitation, software applications, technical support, and website development.[17] On information and belief, Defendants' components are designed to be used with and connected to other interoperable components, which are further intended to enable Defendants' customers to make and use computer-based applications, systems, and methods that infringe the '264 Patent. Defendants' components are specifically adapted for use in computer-based applications, systems, and methods that infringe the '264 Patent, and such components constitute material aspects of infringing computer-based applications that are not staple articles or commodities of commerce suitable for substantial non-infringing uses, all of which is known to Defendants. Since at least the time of this lawsuit, and on information and belief since an earlier time, Defendants have known that their customers have used and continue to use Defendants' components in a manner that directly infringes the '264 Patent, or have been and continue to be willfully blind to their customers' infringing use. Defendants are thus liable for contributory infringement of the '264 Patent pursuant to 35 U.S.C. § 271(c).

---

[17] *See* Aetna, Accountable Care Solutions, http://www.aetnaacs.com/ (last visited Dec. 11, 2012).

95.     In addition, on information and belief, Defendants have infringed and are infringing the '264 Patent with knowledge of HealthTrio's patent rights, at least from the time of the filing of the present lawsuit, and with knowledge that Defendants' accused products infringe the '264 Patent.   Defendants' acts of infringement have been and continue to be willful, deliberate, and in reckless disregard of HealthTrio's patent rights.

96.     HealthTrio has suffered and continues to suffer damages as a result of Defendants' direct and indirect infringement of the '264 Patent.   Pursuant to 35 U.S.C. § 284, HealthTrio is entitled to recover damages from Defendants for their infringing acts in an amount subject to proof at trial, but no less than a reasonable royalty.   HealthTrio is further entitled to enhanced damages for Defendants' acts of willful patent infringement pursuant to 35 U.S.C. § 284.

97.     Defendants' infringement of the '264 Patent has damaged and will continue to damage HealthTrio, causing irreparable harm for which there is no adequate remedy at law, unless Defendants are enjoined by this Court.

## VIII.   FOURTH CLAIM FOR RELIEF
### (Infringement of U.S. Patent No. 7,831,446)

98.     HealthTrio refers to and incorporates herein the allegations of paragraphs 1 through 97.

99.     Defendants have directly infringed and continue to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '446 Patent by making, using, selling, or offering to sell in the United States certain methods or systems disclosed and claimed in the '446 Patent, specifically including, but not limited to, Aetna's CareEngine-powered Personal Health Record; MyActiveHealth PHR; CareEngine System;

MedQuery program; NaviNet administrative portal; Accountable Care Solutions products and services that are described and promoted on Defendants' websites; Medicity's interoperability platform and cloud services, including, but not limited to, Medicity's ProAccess and MediTrust products and services; terminology services platform; health exchange solutions; and technology framework for achieving semantic interoperability. Defendants are thus liable for direct infringement of the '446 Patent pursuant to 35 U.S.C. § 271(a).

100.   In addition to or in the alternative to direct infringement, Defendants have also induced and contributed and continue to induce and contribute to their customers' direct infringement of the '446 Patent by selling, making or configuring computer-based applications, systems, and methods that embody the patented inventions or components thereof claimed in the '446 Patent.

101.   In particular, on information and belief, Defendants actively, knowingly and intentionally induce their customers to infringe the patented inventions claimed in the '446 Patent by, among other things, providing architecture, technical support, or assisting their customers to use infringing computer-based applications, systems, and methods; and by instructing, facilitating or assisting their customers on how to use Defendants' infringing computer-based applications, systems, and methods.

102.   On information and belief, Defendants provide non-public technical support and documentation to their customers. Since at least the date this lawsuit was filed, and on information and belief since an earlier time, Defendants have known that their systems and components are used by their customers in an infringing manner or have been and continue to be willfully blind to such infringing use and have acted with the specific intent to encourage and

facilitate such infringing use.  Defendants are thus liable for inducing their customers to infringe the '446 Patent pursuant to 35 U.S.C. § 271(b).

103.    Furthermore, on information and belief, Defendants offer to sell and sell (directly or through intermediaries or authorized agents under Defendants' control) to customers and potential customers in this Judicial District and elsewhere in the United States, component parts of HealthTrio's patented inventions, including, without limitation, software applications, technical support, and website development. [18]   On information and belief, Defendants' components are designed to be used with and connected to other interoperable components, which are further intended to enable Defendants' customers to make and use computer-based applications, systems, and methods that infringe the '446 Patent.  Defendants' components are specifically adapted for use in computer-based applications, systems, and methods that infringe the '446 Patent, and such components constitute material aspects of infringing computer-based applications that are not staple articles or commodities of commerce suitable for substantial non-infringing uses, all of which is known to Defendants.  Since at least the time of this lawsuit, and on information and belief since an earlier time, Defendants have known that their customers have used and continue to use Defendants' components in a manner that directly infringes the '446 Patent, or have been and continue to be willfully blind to their customers' infringing use.  Defendants are thus liable for contributory infringement of the '446 Patent pursuant to 35 U.S.C. § 271(c).

---

[18] *See* Aetna, Accountable Care Solutions, http://www.aetnaacs.com/ (last visited Dec. 11, 2012).

104.    In addition, on information and belief, Defendants have infringed and are infringing the '446 Patent with knowledge of HealthTrio's patent rights, at least from the time of the filing of the present lawsuit, and with knowledge that Defendants' accused products infringe the '446 Patent.   Defendants' acts of infringement have been and continue to be willful, deliberate, and in reckless disregard of HealthTrio's patent rights.

105.    HealthTrio has suffered and continues to suffer damages as a result of Defendants' direct and indirect infringement of the '446 Patent.   Pursuant to 35 U.S.C. § 284, HealthTrio is entitled to recover damages from Defendants for their infringing acts in an amount subject to proof at trial, but no less than a reasonable royalty.   HealthTrio is further entitled to enhanced damages for Defendants' acts of willful patent infringement pursuant to 35 U.S.C. § 284.

106.    Defendants' infringement of the '446 Patent has damaged and will continue to damage HealthTrio, causing irreparable harm for which there is no adequate remedy at law, unless Defendants are enjoined by this Court.

## IX.   FIFTH CLAIM FOR RELIEF
### (Infringement of U.S. Patent No. 8,073,710)

107.    HealthTrio refers to and incorporates herein the allegations of paragraphs 1 through 106.

108.    Defendants have directly infringed and continue to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '710 Patent by making, using, selling, or offering to sell in the United States certain methods or systems disclosed and claimed in the '710 Patent, specifically including, but not limited to, Aetna's CareEngine-powered Personal Health Record; MyActiveHealth PHR; CareEngine System;

MedQuery program; NaviNet administrative portal; Accountable Care Solutions products and services that are described and promoted on Defendants' websites; Medicity's interoperability platform and cloud services, including, but not limited to, Medicity's ProAccess and MediTrust products and services; terminology services platform; health exchange solutions; and technology framework for achieving semantic interoperability.   Defendants are thus liable for direct infringement of the '710 Patent pursuant to 35 U.S.C. § 271(a).

109.   In addition to or in the alternative to direct infringement, Defendants have also induced and contributed and continue to induce and contribute to their customers' direct infringement of the '710 Patent by selling, making or configuring computer-based applications, systems, and methods that embody the patented inventions or components thereof claimed in the '710 Patent.

110.   In particular, on information and belief, Defendants actively, knowingly and intentionally induce their customers to infringe the patented inventions claimed in the '710 Patent by, among other things, providing architecture, technical support, or assisting their customers to use infringing computer-based applications, systems, and methods; and by instructing, facilitating, or assisting their customers on how to use Defendants' infringing computer-based applications, systems, and methods.

111.   On information and belief, Defendants provide non-public technical support and documentation to their customers.   Since at least the date this lawsuit was filed, and on information and belief since an earlier time, Defendants have known that their systems and components are used by their customers in an infringing manner or have been and continue to be willfully blind to such infringing use and have acted with the specific intent to encourage and

facilitate such infringing use.  Defendants are thus liable for inducing their customers to infringe the '710 Patent pursuant to 35 U.S.C. § 271(b).

112.    Furthermore, on information and belief, Defendants offer to sell and sell (directly or through intermediaries or authorized agents under Defendants' control) to customers and potential customers in this Judicial District and elsewhere in the United States, component parts of HealthTrio's patented inventions, including, without limitation, software applications, technical support, and website development. [19]   On information and belief, Defendants' components are designed to be used with and connected to other interoperable components, which are further intended to enable Defendants' customers to make and use computer-based applications, systems, and methods that infringe the '710 Patent.  Defendants' components are specifically adapted for use in computer-based applications, systems, and methods that infringe the '710 Patent, and such components constitute material aspects of infringing computer-based applications that are not staple articles or commodities of commerce suitable for substantial non-infringing uses, all of which is known to Defendants.  Since at least the time of this lawsuit, and on information and belief since an earlier time, Defendants have known that their customers have used and continue to use Defendants' components in a manner that directly infringes the '710 Patent, or have been and continue to be willfully blind to their customers' infringing use. Defendants are thus liable for contributory infringement of the '710 Patent pursuant to 35 U.S.C. § 271(c).

_____

[19] *See* Aetna, Accountable Care Solutions, http://www.aetnaacs.com/ (last visited Dec. 11, 2012).

113.    In addition, on information and belief, Defendants have infringed and are infringing the '710 Patent with knowledge of HealthTrio's patent rights, at least from the time of the filing of the present lawsuit, and with knowledge that Defendants' accused products infringe the '710 Patent.   Defendants' acts of infringement have been and continue to be willful, deliberate, and in reckless disregard of HealthTrio's patent rights.

114.    HealthTrio has suffered and continues to suffer damages as a result of Defendants' direct and indirect infringement of the '710 Patent.   Pursuant to 35 U.S.C. § 284, HealthTrio is entitled to recover damages from Defendants for their infringing acts in an amount subject to proof at trial, but no less than a reasonable royalty.   HealthTrio is further entitled to enhanced damages for Defendants' acts of willful patent infringement pursuant to 35 U.S.C. § 284.

115.    Defendants' infringement of the '710 Patent has damaged and will continue to damage HealthTrio, causing irreparable harm for which there is no adequate remedy at law, unless Defendants are enjoined by this Court.

## X.    SIXTH CLAIM FOR RELIEF
### (Infringement of U.S. Patent No. 8,214,234)

116.    HealthTrio refers to and incorporates herein the allegations of paragraphs 1 through 115.

117.    Defendants have directly infringed and continue to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '234 Patent by making, using, selling, or offering to sell in the United States certain methods or systems disclosed and claimed in the '234 Patent, specifically including, but not limited to, Aetna's CareEngine-powered Personal Health Record; MyActiveHealth PHR; CareEngine System;

MedQuery program; NaviNet administrative portal; Accountable Care Solutions products and services that are described and promoted on Defendants' websites; Medicity's interoperability platform and cloud services, including, but not limited to, Medicity's ProAccess and MediTrust products and services; terminology services platform; health exchange solutions; and technology framework for achieving semantic interoperability. Defendants are thus liable for direct infringement of the '234 Patent pursuant to 35 U.S.C. § 271(a).

118. In addition to or in the alternative to direct infringement, Defendants have also induced and contributed and continue to induce and contribute to their customers' direct infringement of the '234 Patent by selling, making or configuring computer-based applications, systems, and methods that embody the patented inventions or components thereof claimed in the '234 Patent.

119. In particular, on information and belief, Defendants actively, knowingly and intentionally induce their customers to infringe the patented inventions claimed in the '234 Patent by, among other things, providing architecture, technical support, or assisting their customers to use infringing computer-based applications, systems, and methods; and by instructing, facilitating or assisting their customers on how to use Defendants' infringing computer-based applications, systems, and methods.

120. On information and belief, Defendants provide non-public technical support and documentation to their customers. Since at least the time of this lawsuit, and on information and belief since an earlier time, Defendants have known that their systems and components are used by their customers in an infringing manner or have been and continue to be willfully blind to such infringing use and have acted with the specific intent to encourage and facilitate such

infringing use.  Defendants are thus liable for inducing their customers to infringe the '234 Patent pursuant to 35 U.S.C. § 271(b).

121.    Furthermore, on information and belief, Defendants offer to sell and sell (directly or through intermediaries or authorized agents under Defendants' control) to customers and potential customers in this Judicial District and elsewhere in the United States, component parts of HealthTrio's patented inventions, including, without limitation, software applications, technical support, and website development.[20]  On information and belief, Defendants' components are designed to be used with and connected to other interoperable components, which are further intended to enable Defendants' customers to make and use computer-based applications, systems, and methods that infringe the '234 Patent.  Defendants' components are specifically adapted for use in computer-based applications, systems, and methods that infringe the '234 Patent, and such components constitute material aspects of infringing computer-based applications that are not staple articles or commodities of commerce suitable for substantial non-infringing uses, all of which is known to Defendants.  Since at least the time of this lawsuit, and on information and belief since an earlier time, Defendants have known that their customers have used and continue to use Defendants' components in a manner that directly infringes the '234 Patent, or have been and continue to be willfully blind to their customers' infringing use.  Defendants are thus liable for contributory infringement of the '234 Patent pursuant to 35 U.S.C. § 271(c).

---

[20] *See* Aetna, Accountable Care Solutions, http://www.aetnaacs.com/ (last visited Dec. 11, 2012).

122.     In addition, on information and belief, Defendants have infringed and are infringing the '234 Patent with knowledge of HealthTrio's patent rights, at least from the time of the filing of the present lawsuit, and with knowledge that Defendants' accused products infringe the '234 Patent.   Defendants' acts of infringement have been and continue to be willful, deliberate, and in reckless disregard of HealthTrio's patent rights.

123.     HealthTrio has suffered and continues to suffer damages as a result of Defendants' direct and indirect infringement of the '234 Patent.   Pursuant to 35 U.S.C. § 284, HealthTrio is entitled to recover damages from Defendants for their infringing acts in an amount subject to proof at trial, but no less than a reasonable royalty.   HealthTrio is further entitled to enhanced damages for Defendants' acts of willful patent infringement pursuant to 35 U.S.C. § 284.

124.     Defendants' infringement of the '234 Patent has damaged and will continue to damage HealthTrio, causing irreparable harm for which there is no adequate remedy at law, unless Defendants are enjoined by this Court.

## XI.     SEVENTH CLAIM FOR RELIEF
### (Infringement of U.S. Patent No. 8,229,760)

125.     HealthTrio refers to and incorporates herein the allegations of paragraphs 1 through 124.

126.     Defendants have directly infringed and continue to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '760 Patent by making, using, selling, or offering to sell in the United States certain methods or systems disclosed and claimed in the '760 Patent, specifically including, but not limited to, Aetna's CareEngine-powered Personal Health Record; MyActiveHealth PHR; CareEngine System;

MedQuery program; NaviNet administrative portal; Accountable Care Solutions products and services that are described and promoted on Defendants' websites; Medicity's interoperability platform and cloud services, including, but not limited to, Medicity's ProAccess and MediTrust products and services; terminology services platform; health exchange solutions; and technology framework for achieving semantic interoperability.   Defendants are thus liable for direct infringement of the '760 Patent pursuant to 35 U.S.C. § 271(a).

127.    In addition to or in the alternative to direct infringement, Defendants have also induced and contributed and continue to induce and contribute to their customers' direct infringement of the '760 Patent by selling, making or configuring computer-based applications, systems, and methods that embody the patented inventions or components thereof claimed in the '760 Patent.

128.    In particular, on information and belief, Defendants actively, knowingly and intentionally induce their customers to infringe the patented inventions claimed in the '760 Patent by, among other things, providing architecture, technical support, or assisting their customers to use infringing computer-based applications, systems, and methods; and by instructing, facilitating or assisting their customers on how to use Defendants' infringing computer-based applications, systems, and methods.

129.    On information and belief, Defendants provide non-public technical support and documentation to their customers.  Since at least the date this lawsuit was filed, and on information and belief since an earlier time, Defendants have known that their systems and components are used by their customers in an infringing manner or have been and continue to be willfully blind to such infringing use and have acted with the specific intent to encourage and

facilitate such infringing use.  Defendants are thus liable for inducing their customers to infringe the '760 Patent pursuant to 35 U.S.C. § 271(b).

130.    Furthermore, on information and belief, Defendants offer to sell and sell (directly or through intermediaries or authorized agents under Defendants' control) to customers and potential customers in this Judicial District and elsewhere in the United States, component parts of HealthTrio's patented inventions, including, without limitation, software applications, technical support, and website development.[21]   On information and belief, Defendants' components are designed to be used with and connected to other interoperable components, which are further intended to enable Defendants' customers to make and use computer-based applications, systems, and methods that infringe the '760 Patent.  Defendants' components are specifically adapted for use in computer-based applications, systems, and methods that infringe the '760 Patent, and such components constitute material aspects of infringing computer-based applications that are not staple articles or commodities of commerce suitable for substantial non-infringing uses, all of which is known to Defendants.  Since at least the date this lawsuit was filed, and on information and belief since an earlier time, Defendants have known that their customers have used and continue to use Defendants' components in a manner that directly infringes the '760 Patent, or have been and continue to be willfully blind to their customers' infringing use.  Defendants are thus liable for contributory infringement of the '760 Patent pursuant to 35 U.S.C. § 271(c).

---

[21] *See* Aetna, Accountable Care Solutions, http://www.aetnaacs.com/ (last visited Dec. 11, 2012).

131.    In addition, on information and belief, Defendants have infringed and are infringing the '760 Patent with knowledge of HealthTrio's patent rights, at least from the time of the filing of the present lawsuit, and with knowledge that Defendants' accused products infringe the '760 Patent.   Defendants' acts of infringement have been and continue to be willful, deliberate, and in reckless disregard of HealthTrio's patent rights.

132.    HealthTrio has suffered and continues to suffer damages as a result of Defendants' direct and indirect infringement of the '760 Patent.   Pursuant to 35 U.S.C. § 284, HealthTrio is entitled to recover damages from Defendants for their infringing acts in an amount subject to proof at trial, but no less than a reasonable royalty.   HealthTrio is further entitled to enhanced damages for Defendants' acts of willful patent infringement pursuant to 35 U.S.C. § 284.

133.    Defendants' infringement of the '760 Patent has damaged and will continue to damage HealthTrio, causing irreparable harm for which there is no adequate remedy at law, unless Defendants are enjoined by this Court.

## XII.    EIGHTH CLAIM FOR RELIEF
### (Infringement of U.S. Patent No. 8,365,954)

134.    HealthTrio refers to and incorporates herein the allegations of paragraphs 1 through 133.

135.    Defendants have directly infringed and continue to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '954 Patent by making, using, selling, or offering to sell in the United States certain methods or systems disclosed and claimed in the '954 Patent, specifically including, but not limited to, Aetna's CareEngine-powered Personal Health Record; MyActiveHealth PHR; CareEngine System;

MedQuery program; NaviNet administrative portal; Accountable Care Solutions products and services that are described and promoted on Defendants' websites; Medicity's interoperability platform and cloud services, including, but not limited to, Medicity's ProAccess and MediTrust products and services; terminology services platform; health exchange solutions; and technology framework for achieving semantic interoperability.   Defendants are thus liable for direct infringement of the '954 Patent pursuant to 35 U.S.C. § 271(a).

136.   In addition to or in the alternative to direct infringement, Defendants have also induced and contributed and continue to induce and contribute to their customers' direct infringement of the '954 Patent by selling, making or configuring computer-based applications, systems, and methods that embody the patented inventions or components thereof claimed in the '954 Patent.

137.   In particular, on information and belief, Defendants actively, knowingly and intentionally induce their customers to infringe the patented inventions claimed in the '954 Patent by, among other things, providing architecture, technical support, or assisting their customers to use infringing computer-based applications, systems, and methods; and by instructing, facilitating or assisting their customers on how to use Defendants' infringing computer-based applications, systems, and methods.

138.   On information and belief, Defendants provide non-public technical support and documentation to their customers.  Since at least the date this lawsuit was filed, and on information and belief since an earlier time, Defendants have known that their systems and components are used by their customers in an infringing manner or have been and continue to be willfully blind to such infringing use and have acted with the specific intent to encourage and

facilitate such infringing use.  Defendants are thus liable for inducing their customers to infringe the '954 Patent pursuant to 35 U.S.C. § 271(b).

139.    Furthermore, on information and belief, Defendants offer to sell and sell (directly or through intermediaries or authorized agents under Defendants' control) to customers and potential customers in this Judicial District and elsewhere in the United States, component parts of HealthTrio's patented inventions, including, without limitation, software applications, technical support, and website development.[22]   On information and belief, Defendants' components are designed to be used with and connected to other interoperable components, which are further intended to enable Defendants' customers to make and use computer-based applications, systems, and methods that infringe the '954 Patent.  Defendants' components are specifically adapted for use in computer-based applications, systems, and methods that infringe the '954 Patent, and such components constitute material aspects of infringing computer-based applications that are not staple articles or commodities of commerce suitable for substantial non-infringing uses, all of which is known to Defendants.  Since at least the time of this lawsuit, and on information and belief since an earlier time, Defendants have known that their customers have used and continue to use Defendants' components in a manner that directly infringes the '954 Patent, or have been and continue to be willfully blind to their customers' infringing use.  Defendants are thus liable for contributory infringement of the '954 Patent pursuant to 35 U.S.C. § 271(c).

---

[22] *See* Aetna, Accountable Care Solutions, http://www.aetnaacs.com/ (last visited Dec. 11, 2012).

140.    In addition, on information and belief, Defendants have infringed and are infringing the '954 Patent with knowledge of HealthTrio's patent rights, at least from the time of the filing of the present lawsuit, and with knowledge that Defendants' accused products infringe the '954 Patent.   Defendants' acts of infringement have been and continue to be willful, deliberate, and in reckless disregard of HealthTrio's patent rights.

141.    HealthTrio has suffered and continues to suffer damages as a result of Defendants' direct and indirect infringement of the '954 Patent.   Pursuant to 35 U.S.C. § 284, HealthTrio is entitled to recover damages from Defendants for their infringing acts in an amount subject to proof at trial, but no less than a reasonable royalty.   HealthTrio is further entitled to enhanced damages for Defendants' acts of willful patent infringement pursuant to 35 U.S.C. § 284.

142.    Defendants' infringement of the '954 Patent has damaged and will continue to damage HealthTrio, causing irreparable harm for which there is no adequate remedy at law, unless Defendants are enjoined by this Court.

### XIII.   NINTH CLAIM FOR RELIEF
**(Infringement of U.S. Patent No. 8,131,563)**

143.    HealthTrio refers to and incorporates herein the allegations of paragraphs 1 through 142.

144.    Defendants have directly infringed and continue to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '563 Patent by making, using, selling, or offering to sell in the United States certain methods or systems disclosed and claimed in the '563 Patent, specifically including, but not limited to, Aetna's CareEngine-powered Personal Health Record; MyActiveHealth PHR; CareEngine System;

MedQuery program; NaviNet administrative portal; Accountable Care Solutions products and services that are described and promoted on Defendants' websites; Medicity's interoperability platform and cloud services, including, but not limited to, Medicity's ProAccess and MediTrust products and services; terminology services platform; health exchange solutions; and technology framework for achieving semantic interoperability.   Defendants are thus liable for direct infringement of the '563 Patent pursuant to 35 U.S.C. § 271(a).

145.   In addition to or in the alternative to direct infringement, Defendants have also induced and contributed and continue to induce and contribute to their customers' direct infringement of the '563 Patent by selling, making or configuring computer-based applications, systems, and methods that embody the patented inventions or components thereof claimed in the '563 Patent.

146.   In particular, on information and belief, Defendants actively, knowingly and intentionally induce their customers to infringe the patented inventions claimed in the '563 Patent by, among other things, providing architecture, technical support, or assisting their customers to use infringing computer-based applications, systems, and methods; and by instructing, facilitating or assisting their customers on how to use Defendants' infringing computer-based applications, systems, and methods.

147.   On information and belief, Defendants provide non-public technical support and documentation to their customers.   Since at least the date this lawsuit was filed, and on information and belief since an earlier time, Defendants have known that their systems and components are used by their customers in an infringing manner or have been and continue to be willfully blind to such infringing use and have acted with the specific intent to encourage and

facilitate such infringing use.  Defendants are thus liable for inducing their customers to infringe the '563 Patent pursuant to 35 U.S.C. § 271(b).

148.    Furthermore, on information and belief, Defendants offer to sell and sell (directly or through intermediaries or authorized agents under Defendants' control) to customers and potential customers in this Judicial District and elsewhere in the United States, component parts of HealthTrio's patented inventions, including, without limitation, software applications, technical support, and website development.[23]  On information and belief, Defendants' components are designed to be used with and connected to other interoperable components, which are further intended to enable Defendants' customers to make and use computer-based applications, systems, and methods that infringe the '563 Patent.  Defendants' components are specifically adapted for use in computer-based applications, systems, and methods that infringe the '563 Patent, and such components constitute material aspects of infringing computer-based applications that are not staple articles or commodities of commerce suitable for substantial non-infringing uses, all of which is known to Defendants.  Since at least the time of this lawsuit, and on information and belief since an earlier time, Defendants have known that their customers have used and continue to use Defendants' components in a manner that directly infringes the '563 Patent, or have been and continue to be willfully blind to their customers' infringing use.  Defendants are thus liable for contributory infringement of the '563 Patent pursuant to 35 U.S.C. § 271(c).

---

[23] *See* Aetna, Accountable Care Solutions, http://www.aetnaacs.com/ (last visited Dec. 11, 2012).

149.   In addition, on information and belief, Defendants have infringed and are infringing the '563 Patent with knowledge of HealthTrio's patent rights, at least from the time of the filing of the present lawsuit, and with knowledge that Defendants' accused products infringe the '563 Patent.   Defendants' acts of infringement have been and continue to be willful, deliberate, and in reckless disregard of HealthTrio's patent rights.

150.   HealthTrio has suffered and continues to suffer damages as a result of Defendants' direct and indirect infringement of the '563 Patent.   Pursuant to 35 U.S.C. § 284, HealthTrio is entitled to recover damages from Defendants for their infringing acts in an amount subject to proof at trial, but no less than a reasonable royalty.   HealthTrio is further entitled to enhanced damages for Defendants' acts of willful patent infringement pursuant to 35 U.S.C. § 284.

151.   Defendants' infringement of the '563 Patent has damaged and will continue to damage HealthTrio, causing irreparable harm for which there is no adequate remedy at law, unless Defendants are enjoined by this Court.

## XIV.   TENTH CLAIM FOR RELIEF
### (Infringement of U.S. Patent No. 8,321,239)

152.   HealthTrio refers to and incorporates herein the allegations of paragraphs 1 through 151.

153.   Defendants have directly infringed and continue to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '239 Patent by making, using, selling, or offering to sell in the United States certain methods or systems disclosed and claimed in the '239 Patent, specifically including, but not limited to, Aetna's CareEngine-powered Personal Health Record; MyActiveHealth PHR; CareEngine System;

MedQuery program; NaviNet administrative portal; Accountable Care Solutions products and services that are described and promoted on Defendants' websites; Medicity's interoperability platform and cloud services, including, but not limited to, Medicity's ProAccess and MediTrust products and services; terminology services platform; health exchange solutions; and technology framework for achieving semantic interoperability.   Defendants are thus liable for direct infringement of the '239 Patent pursuant to 35 U.S.C. § 271(a).

154.   In addition to or in the alternative to direct infringement, Defendants have also induced and contributed and continue to induce and contribute to their customers' direct infringement of the '239 Patent by selling, making or configuring computer-based applications, systems, and methods that embody the patented inventions or components thereof claimed in the '239 Patent.

155.   In particular, on information and belief, Defendants actively, knowingly and intentionally induce their customers to infringe the patented inventions claimed in the '239 Patent by, among other things, providing architecture, technical support, or assisting their customers to use infringing computer-based applications, systems, and methods; and by instructing, facilitating or assisting their customers on how to use Defendants' infringing computer-based applications, systems, and methods.

156.   On information and belief, Defendants provide non-public technical support and documentation to their customers.  Since at least the date this lawsuit was filed, and on information and belief since an earlier time, Defendants have known that their systems and components are used by their customers in an infringing manner or have been and continue to be willfully blind to such infringing use and have acted with the specific intent to encourage and

facilitate such infringing use.  Defendants are thus liable for inducing their customers to infringe the '239 Patent pursuant to 35 U.S.C. § 271(b).

157.    Furthermore, on information and belief, Defendants offer to sell and sell (directly or through intermediaries or authorized agents under Defendants' control) to customers and potential customers in this Judicial District and elsewhere in the United States, component parts of HealthTrio's patented inventions, including, without limitation, software applications, technical support, and website development.[24]   On information and belief, Defendants' components are designed to be used with and connected to other interoperable components, which are further intended to enable Defendants' customers to make and use computer-based applications, systems, and methods that infringe the '239 Patent.  Defendants' components are specifically adapted for use in computer-based applications, systems, and methods that infringe the '239 Patent, and such components constitute material aspects of infringing computer-based applications that are not staple articles or commodities of commerce suitable for substantial non-infringing uses, all of which is known to Defendants.  Since at least the time of this lawsuit, and on information and belief since an earlier time, Defendants have known that their customers have used and continue to use Defendants' components in a manner that directly infringes the '239 Patent, or have been and continue to be willfully blind to their customers' infringing use. Defendants are thus liable for contributory infringement of the '239 Patent pursuant to 35 U.S.C. § 271(c).

---

[24] *See* Aetna, Accountable Care Solutions, http://www.aetnaacs.com/ (last visited Dec. 11, 2012).

158.     In addition, on information and belief, Defendants have infringed and are infringing the '239 Patent with knowledge of HealthTrio's patent rights, at least from the time of the filing of the present lawsuit, and with knowledge that Defendants' accused products infringe the '239 Patent.   Defendants' acts of infringement have been and continue to be willful, deliberate, and in reckless disregard of HealthTrio's patent rights.

159.     HealthTrio has suffered and continues to suffer damages as a result of Defendants' direct and indirect infringement of the '239 Patent.   Pursuant to 35 U.S.C. § 284, HealthTrio is entitled to recover damages from Defendants for their infringing acts in an amount subject to proof at trial, but no less than a reasonable royalty.   HealthTrio is further entitled to enhanced damages for Defendants' acts of willful patent infringement pursuant to 35 U.S.C. § 284.

160.     Defendants' infringement of the '239 Patent has damaged and will continue to damage HealthTrio, causing irreparable harm for which there is no adequate remedy at law, unless Defendants are enjoined by this Court.

## XV.   JURY DEMAND

161.     HealthTrio hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## XVI.   PRAYER FOR RELIEF

162.     HealthTrio respectfully requests this Court to enter judgment in its favor against Defendants, granting the following relief:

A.     Judgments in HealthTrio's favor on each of HealthTrio's claims for relief;

B.      Judgment in HealthTrio's favor that Defendants have infringed and continue to infringe the '494 Patent;

C.      Judgment in HealthTrio's favor that Defendants have infringed and continue to infringe the '904 Patent;

D.      Judgment in HealthTrio's favor that Defendants have infringed and continue to infringe the '264 Patent;

E.      Judgment in HealthTrio's favor that Defendants have infringed and continue to infringe the '446 Patent;

F.      Judgment in HealthTrio's favor that Defendants have infringed and continue to infringe the '710 Patent;

G.      Judgment in HealthTrio's favor that Defendants have infringed and continue to infringe the '234 Patent;

H.      Judgment in HealthTrio's favor that Defendants have infringed and continue to infringe the '760 Patent;

I.      Judgment in HealthTrio's favor that Defendants have infringed and continue to infringe the '954 Patent;

J.      Judgment in HealthTrio's favor that Defendants have infringed and continue to infringe the '563 Patent;

K.      Judgment in HealthTrio's favor that Defendants have infringed and continue to infringe the '239 Patent;

L.      An award to HealthTrio of damages adequate to compensate it for Defendants' acts of patent infringement, both directly or indirectly, but in no event less

than a reasonable royalty, together with interest and costs as fixed by the Court pursuant to 35 U.S.C. § 284;

M.      An award to HealthTrio of enhanced damages, up to and including treble damages, pursuant to 35 U.S.C. § 284, for Defendants' acts of willful patent infringement of the '494, '904, '264, '446, '710, '234, '760, '954, '563, and/or '239 Patents;

N.      A grant of permanent injunction, pursuant to 35 U.S.C. § 283, against Defendants, enjoining Defendants from further acts of patent infringement;

O.      An award to HealthTrio of its costs of suit and reasonable attorneys' fees, pursuant to 35 U.S.C. § 285, due to the exceptional nature of this case; and

P.      Any further relief that this Court deems just and proper.

Dated:  December 11, 2012                    Respectfully submitted,


                                             */s/ Donald Puckett*
                                             G. Donald Puckett
                                             (Admitted to District of Colorado)
                                             Paul J. Skiermont
                                             (Admitted to District of Colorado)
                                             Rajkumar Vinnakota
                                             (Admitted to District of Colorado)
                                             Shellie Stephens
                                             (Admitted to District of Colorado)
                                             SKIERMONT PUCKETT LLP
                                             2200 Ross Avenue, Suite 4800W
                                             Dallas, Texas 75201
                                             (214) 978-6600 (Telephone)
                                             (214) 978-6601 (Facsimile)
                                             donald.puckett@skiermontpuckett.com
                                             paul.skiermont@skiermontpuckett.com
                                             kumar.vinnakota@skiermontpuckett.com
                                             shellie.stephens@skiermontpuckett.com

                                             Benjamin B. Lieb
                                             SHERIDAN ROSS P.C.
                                             1560 Broadway, Suite 1200
                                             Denver, Colorado 80202-5141
                                             (303) 863-9700 (Telephone)
                                             (303) 863-0223 (Facsimile)
                                             blieb@sheridanross.com
                                             litigation@sheridanross.com


                                             **ATTORNEYS FOR PLAINTIFF**
                                             **HEALTHTRIO, LLC**