**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-03229-REB-MJW

HEALTHTRIO, LLC, a Colorado limited liability company

      Plaintiff,

v.

AETNA, INC., a Connecticut corporation
ACTIVEHEALTH MANAGEMENT, INC., a Delaware corporation, and
MEDICITY, INC., a Colorado corporation,

      Defendants.

---

**ORDER OVERRULING OBJECTIONS TO AND ADOPTING
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Blackburn, J.**

The matters before me are (1) the **Report & Recommendation on Defendants'
Motion for Judgment on the Pleadings (Docket No. 185) and Order on Plaintiff's
Motion for Leave to File a Sur-Reply (Docket No. 205)** [#248],[1] of the magistrate
judge filed June 17, 2015; and (2) the related objections asserted in **HealthTrio's
Objections to Report & Recommendation on Defendants' Motion for Judgment on
the Pleadings [Dkt. #248]** [#255], filed July 15, 2015.  I overrule the objections, adopt
the recommendation, grant defendants' motion for judgment on the pleadings, and
dismiss plaintiff's claims of patent infringement as being drawn to ineligible subject
matter under 35 U.S.C. § 101.

---

[1] "[#248]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this
convention throughout this order.

As required by 28 U.S.C. § 636(b), I have reviewed *de novo* all portions of the

recommendation to which objections have been filed, and have considered carefully the

recommendation, the objections, and the applicable caselaw.  The recommendation is

exhaustively detailed and cogently reasoned.  So thoroughly has the magistrate judge

considered and analyzed the issues raised by and inherent to the motion that any

extended exegesis on my part would be little more than a superfluous, festooned

reiteration of his excellent work.

Plaintiff's objections focus exclusively on the first prong of the bipartite test

established in ***Mayo Collaborative Services v. Prometheus Laboratories, Inc.***, –

U.S. –, 132 S.Ct. 1289, 182 L.Ed.2d 321 (2012), for determining whether a claim is

patentable under 35 U.S.C. § 101.[2]  The relevant inquiry at this first step is whether the

claim of the patent is drawn to an abstract idea, which is not patentable.  ***See id***. at

1293-94; ***see also Alice Corporation Pty. Ltd. v. CLS Bank International***, – U.S. –,

134 S.Ct. 2347, 2355, 189 L.Ed.2d 296 (2014) (noting "the longstanding rule that an

idea of itself is not patentable") (citation and internal quotation marks and alterations

omitted).  An idea is abstract if it has "no particular concrete or tangible form."

***Ultramercial, Inc. v. Hulu, LLC***, 772 F.3d 709, 715 (Fed. Cir. 2014), ***cert. denied***, 135

S.Ct. 2907 (2015).

---

[2]  Plaintiff presents no actual objection to the magistrate judge's recommendation insofar as it
addresses the second prong of the ***Mayo*** test, but instead refers the court to the arguments raised in its
response to defendants' original Rule 12(c) motion.  (***See Obj.*** at 12-13.)  However, absent evidence
plain error, of which there is none, such references place no burden on this court to make arguments on
plaintiff's behalf as to how the magistrate judge actually erred in his analysis of this aspect of the
underlying motion.

Concerning the Patient Health Record ("PHR") patents, I have little trouble in finding that these patents are drawn to an abstract idea.  The abstraction is the collection of data from various sources with the goal of compiling a single, comprehensive, patient health record.[3]  Numerous courts have found patents directed to similar concepts to embody an abstract – and thus, unpatentable – idea.  ***See, e.g.***, ***MyMedicalRecords, Inc. v. Walgreen Co.***, 2014 WL 7339201 at \*3 (C.D. Cal. Dec. 23, 2014); ***Amdocs (Israel) Ltd. v. Openet Telecom, Inc.***, 56 F.Supp.3d 813, 820 (E.D. Va. 2014); ***Cogent Medicine, Inc. v. Elsevier Inc.***, 70 F.Supp.3d 1058, 1063-65 (N.D. Cal. 2014); ***Sinclair-Allison, Inc. v. Fifth Ave. Physician Services, LLC***, 2012 WL 6629561 at \*4 (W.D. Okla. Dec, 19, 2012), ***aff'd***, 530 Fed. Appx. 939 (10th Cir. Sept. 12, 2013), ***cert. denied***, 134 S.Ct. 1299 (2014); ***SmartGene, Inc. v. Advanced Biological Laboratories, SA***, 852 F.Supp.2d 42, 57 (D.D.C. 2012), ***aff'd***, 555 Fed. Appx. 950 (Fed. Cir. Jan. 24, 2014), ***cert. denied***, 135 S.Ct. 58 (2014).

Plaintiff objects on the ground that the PHR patents "solved a crucial technical problem unique to the internet age:  how to glean the rewards of internet-fueled speed and efficiency from crops of divided and incompatible records."  (**Obj.** at 6.)  This argument is but a different iteration of the logical fallacy identified by the magistrate judge – that is, it side-steps the fundamental task of determining the nature of the underlying concept of the patent by focusing improperly on the complexity and challenge of the task that idea serves.  (**See Recommendation** at 8-9.)  Yet an idea is not any less an abstraction merely because its implementation is complicated.

---

[3] Plaintiff's attempt to elaborate on the concept of the patent (**see Obj.** at 11-12) is merely gloss on the same fundamental concept that underlies both the PHR and normalization patents.

Likewise, that the patented method increases the speed and efficiency at which a task

may be accomplished does not make an abstract concept sufficiently concrete to be

patentable. *See Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada*

*(U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012), *cert. denied*, 134 S.Ct. 2870 (2014);

*Source Search Technologies, LLC v. Kayak Software Corp.*, 2015 WL 3980628 at

*7 (D.N.J. July 1, 2015); *Kroy IP Holdings, LLC v. Safeway, Inc.*, – F.Supp.3d –, 2015

WL 3452469 at *11 (E.D. Tex. May 29, 2015), *appeal filed*, No. 15-1782 (Fed. Cir. July

1, 2015).

Nor am I persuaded by plaintiff's attempt to analogize the concept of its PHR

patents to that found to be patentable in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773

F.3d 1245 (Fed. Cir. 2014).[4] Plaintiff's characterization to the contrary notwithstanding,

the challenge addressed by the patents-in-suit – unlike those found patentable in *DDR*

---

[4] The decision in *DDR Holdings* has been cogently summarized by the Texas district court:

> [T]he [*DDR Holdings*] court held that the claimed solution does not
> simply use computers to serve a conventional business purpose; instead,
> it "is necessarily rooted in computer technology in order to overcome a
> problem specially arising in the realm of computer networks." The
> invention entails the storage of visually perceptible elements of numerous
> websites and the construction of new, hybrid web pages that "merge the
> content associated with the products of the third-party merchant with the
> stored 'visually perceptible elements' from the identified host website."
> The . . . claims in the *DDR Holdings* case did not "broadly and
> generically claim 'use of the Internet' to perform an abstract business
> practice," but instead specified "how interactions with the Internet are
> manipulated to yield a desired result." Moreover, the court observed that
> the claims at issue included a specific way to automate the creation of a
> composite web page and did not preempt "every application of the idea of
> increasing sales by making two web pages look the same." In short,
> *DDR Holdings* dealt with a patent that required doing something *to* a
> web page, not simply doing something *on* a web page, a difference that
> the court regarded as highly important to the issue of patent eligibility.

*Kroy IP Holdings, LLC*, 2015 WL 3452469 at *10 (internal citations omitted; emphases in original).

*Holdings* – are not unique to the Internet age.  *See id.* at 1257.  Unlike the patent considered in *DDR Holdings*, plaintiff's PHR patents merely contemplate the use of a computer to accomplish the abstract concept at the heart of the patents.  *See Alice Corporation Pty.*, 134 S.Ct. at 2358.   Indeed, *DDR Holdings* itself specifically cautioned that "not all claims purporting to address Internet-centric challenges are eligible for patent," *DDR Holdings*, 773 F.3d at 1258, and courts considering *DDR Holdings* subsequently have been vigilant in maintaining that distinction, *see, e.g.*, *Open Text S.A. v. Box, Inc.*, 78 F.Supp.3d 1043, 1050 (N.D. Cal. 2015), *appeal filed*, No. 15-1392 (Fed. Cir. Feb. 27, 2015), *and appeal filed*, No. 15-1978 (Fed. Cir. Sept. 4, 2015) ; *CertusView Technologies, LLC v. S&N Locating Services, LLC*, – F.Supp.3d –, 2015 WL 269427 at *22 n.15 (E.D. Va. Jan. 21, 2015).

Although the normalization patents require a slightly more nuanced inquiry, ultimately I agree that they too are drawn to an abstract idea.  The normalization patents are directed to a method of transforming the data collected from various sources from one or more disparate formats into an integrated format.  Although the patent describes a method by which the program determines the meaning of data, that task arguably is one within the capacity of the human mind to perform, and therefore ineligible for patent:

> Methods which can be performed entirely in the human mind are unpatentable not because there is anything wrong with claiming mental method steps as part of a process containing non-mental steps, but rather because computational methods which can be performed entirely in the human mind are the types of methods that embody the basic tools of scientific and technological work that are free to all men and reserved exclusively to none.

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011)

(citations, internal quotation marks, and footnote omitted).

Yet even if the method of the normalization patents were considered to be beyond human ability, it still is not patent-eligible because it is not drawn to a specific structure or machine.  *See Gottschalk v. Benson*, 409 U.S. 63, 64, 93 S.Ct. 253, 254, 34 L.Ed.2d 273 (1972); *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014).  A patent which "amount[s] to nothing significantly more than an instruction to apply the abstract idea of [normalizing data from different sources] using some unspecified, generic computer," does not "transform an abstract idea into a patent-eligible invention."  *Alice Corporation Pty*, 134 S.Ct. at 2360 (citations and internal quotation marks omitted).

Nor am I persuaded by plaintiff's attempt to analogize the idea underlying the normalization patents to that considered in *Research Corporation Technologies, Inc. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010).  The patent in *Research Corporation Technologies* claimed a method for rendering a halftone image of a digital image by comparing the digital image, pixel by pixel, to a "blue noise mask."  *Id.* at 863.  Although generated by an algorithm, the blue noise mask constituted a specific, cognizable software device independent of the image being manipulated.  *Id.* at 873. By contrast, the normalization patents' "rules engine" is merely a generalized directive to the computer to implement the normalization formula.  It is untethered from any specific structure or machine which might impose a meaningful limit on the claimed

method.[5]  "Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible."  *Digitech Image Technologies*, 758 F.3d at 1351.  Such is precisely the nature of the normalization patents here.

I have considered plaintiff's objections which contend that the magistrate judge committed errors of material fact and find them to be without merit.  I also reject plaintiff's suggestion that the asserted failure of the magistrate judge to consider all 497 patent claims ostensibly at issue in this case violated its rights of due process.  The magistrate judge stated expressly that he had considered all claims, but found no material distinctions.  (**Recommendation** at 7 n.2.)  Given the exquisite care and thoroughness which the recommendation clearly evidences, the court takes the magistrate judge at his word, especially when plaintiff has identified not a single, material distinction which was allegedly overlooked.

I thus find and conclude that the arguments advanced, authorities cited, and findings of fact, conclusions of law, and recommendation proposed by the magistrate judge should be approved and adopted.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the recommendation contained within the **Report & Recommendation on Defendants' Motion for Judgment on the Pleadings (Docket No. 185) and Order on Plaintiff's Motion for Leave to File a Sur-Reply (Docket No. 205)** [#248], of the

---

[5]  In addition, the patent in **Research Corporation Technologies** considered a problem clearly grounded in improving the technology to which the idea was applied.  **See Alice Corporation Pty**, 134 S.Ct. at 2359.  There is no analogue in the normalization patents.

magistrate judge filed June 17, 2015, is approved and adopted as an order of this court;

2.   That the objections stated in **HealthTrio's Objections to Report &**

**Recommendation on Defendants' Motion for Judgment on the Pleadings [Dkt.**

**#248]** [#255], filed July 15, 2015, are overruled;

3.   That **Defendants' Motion for Judgment on the Pleadings** [#185], filed

January 16, 2015, is granted;

4.   That all claims for relief and causes of action asserted by plaintiff in this action

are dismissed with prejudice;

5.   That judgment with prejudice shall enter on behalf of defendants, Aetna, Inc.,

a Pennsylvania corporation; ActiveHealth Management, Inc., a Delaware corporation;

and Medicity, Inc., a Delaware corporation, and against plaintiff, HealthTrio, LLC, a

Colorado limited liability corporation, on all claims for relief and causes of action;

6.   That all pending motions, including, but not limited to, **Defendants' Motion**

**To Compel Reduction of Plaintiff's Number of Claims** [#243], filed June 1, 2015, are

denied;

7.   That the combined Final Pretrial Conference/Trial Preparation Conference

scheduled for February 26, 2016, at 11:00 a.m., and the trial, set to commence March 7,

2016, are vacated; and

8.   That defendants are awarded their costs, to be taxed by the clerk of the court

in the time and manner required by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated September 28, 2015, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge